IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TIFFANY L. KISTLER | ) | Civil No.: 3:14-cv-00942-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

Karen Stolzberg
Attorney at Law
11830 S.W. Kerr Parkway, #315
Lake Oswego, OR 97035

      Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Ronald K. Silver, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Jordan D. Goddard
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Tiffany L. Kistler brings this action pursuant to 42 U.S.C. §§ 405(g) and 1381a seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act ("the Act").

For the reasons that follow, the Commissioner's decision should be reversed and remanded for calculation and immediate payment of benefits.

## **Procedural Background**

Plaintiff filed an application SSI on May 13, 2008, alleging disability beginning August 4, 2004. Plaintiff's claims were denied initially and on reconsideration, and a hearing was held before administrative law judge ("ALJ") Richard Say on April 27, 2011. ALJ Say found Plaintiff not disabled in his decision issued May 13, 2011. Plaintiff sought review with the Appeals Council, which granted review of the decision and remanded the case, with instructions, for further proceedings on July 12, 2012. A second hearing was convened on January 24, 2013, this time before ALJ Steve Lynch. Plaintiff testified at the hearing, as well as vocational expert ("VE") Paul Morrison.

On February 11, 2013, ALJ Lynch issued a decision finding Plaintiff not disabled under the Act. That decision became the final decision of the Commissioner on April 10, 2014, when the Appeals Council denied Plaintiff's request for review. Plaintiff now appeals to this Court for review of the Commissioner's decision.

FINDINGS AND RECOMMENDATION - 2

**<u>Background</u>**

Born in 1972, Plaintiff was 36 years old on her alleged onset date. Plaintiff graduated from high school with a modified diploma denoting participation in special education classes; she completed beauty school thereafter. Plaintiff does not have past relevant work within the meaning of the Act, but she has some employment history as a part-time beautician during the period of 1994-2000. Consequently, she does not qualify for disability insurance benefits ("DIB") under the Act.

Plaintiff alleges disability due to social anxiety, depression, PTSD, attention deficit disorder ("ADD"), memory problems, phobias, neck and back pain, knee pain, obesity, possible fibromyalgia, chronic pelvic pain, and asthma. Tr. 274.

**<u>Disability Analysis</u>**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. The five step sequential inquiry is summarized below, as described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

<u>Step One.</u> The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

<u>Step Two.</u> The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

FINDINGS AND RECOMMENDATION - 3

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a VE, or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to

FINDINGS AND RECOMMENDATION - 4

show the claimant can perform jobs that exist in significant numbers in the national economy.
Id.

### The ALJ's Decision

At the first step of the disability analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 5, 2008, the alleged onset date.

At the second step, the ALJ found plaintiff had the following severe impairments: "anxiety, PTSD, depression, obesity, degenerative joint disease ("DJD") of the right knee, chronic back pain, and asthma." Tr. 24. The ALJ also noted the non-severe impairments of "obstructive sleep apnea, decreased hearing left ear, chest pains, and fibromyalgia." Id.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listings, 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 27.

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). He found Plaintiff retained the capacity required to perform sedentary work, with the following caveats:

> Exertionally, she can lift and carry 10-pounds occasionally and less than 10-pounds frequently. She can sit about 6-hours (cumulatively, not consecutively) in an 8-hour workday with normal breaks. The claimant can also stand and walk for at least 2-hours (cumulatively, not consecutively) in an 8-hour workday with normal breaks. She should be permitted to use a cane specifically for balance, not necessarily ambulation. She cannot operate foot controls. However, her push-pull exertional capacities are unlimited. The undersigned finds the claimant cannot do kneeling or crawling. She can do occasional stooping, balancing, and crouching. She must avoid unprotected heights and hazardous machinery due to side effects from her medications. She also cannot have concentrated exposure to noxious fumes and odors given her history of asthma. Lastly, the undersigned finds, given her history with some weight to the non-acceptable medical source opinions in the record, that the claimant should have no

FINDINGS AND RECOMMENDATION - 5

> interaction with the public, but can have routine, superficial
> interaction with coworkers. The claimant has no manipulative,
> visual or communicative nonexertional limitations.

Tr. 29. In reaching this conclusion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged, but that her statement concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.

At the fourth step of the disability analysis, the ALJ found Plaintiff had no past relevant work.

Based on the testimony of the VE at the fifth step, the ALJ found Plaintiff could perform other jobs that existed in substantial numbers in the national economy. The ALJ cited work as a surveillance systems monitor and charge account clerk. Based on this finding, the ALJ concluded Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

### Discussion

Plaintiff contends the ALJ's decision includes harmful legal error in the determination of her credibility and assessment of medical opinion evidence, which led to further errors in the RFC formulation process, and at step five of the sequential evaluation.

1. Plaintiff's Credibility

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). An ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other

testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. <u>See Batson</u>, 359 F.3d at 1197.

Plaintiff argues the ALJ erred by finding not credible her allegation of disruptive phobia of men when she worked as a hairdresser. The ALJ opined that despite the alleged phobia, Plaintiff was able to raise her two sons in her household, who are now teenagers. Tr. 29. The ALJ further noted Plaintiff now lives with her boyfriend, and she "seemed comfortable" with the male doctor who performed the psychological consultative evaluation associated with her case. <u>Id.</u> 29-30.

The clear-and-convincing standard is the most demanding standard of proof in the SSA legal framework. <u>See Garrison v. Colvin</u>, 759 F.3d 995, 1015 (9th Cir. 2014) (citing <u>Moore v. Comm'r of Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)). The Ninth Circuit has not expressly articulated a comprehensive definition of the clear-and-convincing standard as it pertains to cases arising under the Act. What is known, however, is the clear-and-convincing standard is a step above the specific-and-legitimate standard, and therefore requires both specificity and legitimacy, and something more. Even to meet the less onerous specific-and-legitimate standard, an ALJ must provide a detailed summary of the facts and conflicting medical evidence, present an interpretation thereof, and make findings. <u>See Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995); <u>Lingenfelter</u>, 504 f.3d at 1036. In other civil law contexts, the clear-and-convincing standard has often been defined as the degree of proof which, though not

necessarily conclusive, produces in the mind of a reviewing court a firm belief or conviction as to the allegation sought to be established. See, e.g., Cruzan by Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 285 n.11 (1990). In any case, an ALJ must be scrupulous in evaluating the evidence and adequately justifying an adverse credibility finding.

The Court finds the ALJ's analysis of Plaintiff's alleged phobia of men was not scrupulously executed. Not surprisingly, the Commissioner declined to argue in support of the ALJ's findings regarding Plaintiff's alleged fear of men. Daniel L. Scharf, Ph.D. performed a psycho-diagnostic evaluation of Plaintiff on September 24, 2012, wherein Plaintiff indicated she had difficulty dealing with male customers while working at a beauty salon. Tr. 817. The doctor attributed this to PTSD related to abuse as a child and in past adult relationships. Tr. 817-19. The ALJ's inference that Plaintiff's fear of grown males whom she knows only as salon clients, is somehow not credible because she bore and raised two boys, is unpersuasive, at best. There is no legitimate basis for asserting Plaintiff, whom the ALJ himself recognized has severe anxiety, depression, and PTSD stemming from a significant history of physical and sexual abuse by men, is not credible because she was able tolerate her own male *children*. The Court need not explain the obvious differences between the real or perceived threat of an unfamiliar adult man and one's own child. The ALJ's proffered rationale is without merit.

The ALJ also noted Plaintiff's ability to live with her boyfriend diminishes her credibility. Indeed, Plaintiff testified she has a long-term boyfriend, and reported to Dr. Scharf that she sees him three times per week. Tr. 818. However, Plaintiff also testified that her history of abuse negatively impacts her relationship with her boyfriend, and that when working, she "had issues with men surrounding abuse." Tr. 45, 818. Dr. Scharf also recognized Plaintiff has a history of engaging in "volatile and unstable" relationships. Tr. 819. That Plaintiff currently has

FINDINGS AND RECOMMENDATION - 9

a boyfriend, regardless of the details of the relationship, does not necessarily mean her alleged fear of males is not authentic. Notably, the ALJ declined to investigate whether Plaintiff feared her current boyfriend, or had feared boyfriends in her past, nor did he request that Plaintiff explain how she was able to establish and maintain a relationship with her boyfriend despite her alleged fear. Instead, the ALJ jumped to the conclusion that Plaintiff's alleged fear is histrionic or hyperbole, despite her testimony and reports to mental health providers, her undisputed history of physical and sexual abuse since childhood, and her undisputed and longstanding PTSD. Moreover, despite the ALJ's finding that claimant's allegations were not credible, the ALJ nevertheless prohibited all public interaction in his RFC formulation. Tr. 29. Thus, while the ALJ impugned Plaintiff's credibility based on her allegation of fearing men, he implicitly endorsed the same allegation in another portion of his decision. Tr. 29. This contradiction further undercuts the adequacy of the ALJ's expressed rationale for discounting Plaintiff's testimony.

The ALJ also indicated Plaintiff "seemed comfortable" in the presence of her male psychological consultative examiner. The ALJ supports this finding by citing Ex. 22F, a physical consultative examination report by Joshua Knight, M.D. See tr. 804-09. However, the record cited by the ALJ contains no evidence whatsoever regarding Plaintiff's level of comfort with Dr. Knight. See tr. 804-09. Assuming the ALJ intended to cite Ex. 24F in support of his finding that Plaintiff "seemed comfortable" with a male physician, the rationale still fails, as Dr. Scharf reported she "appeared moderately anxious during the examination," and "she had mild difficulties interacting appropriately with this psychologist due to anxiety and irritability." Tr. 819, 820. As such, the ALJ's rationale is sorely lacking in evidentiary support and sufficient analysis, and therefore cannot be upheld on review.

FINDINGS AND RECOMMENDATION - 10

The ALJ also found Plaintiff not credible based on her work history. The extent of the ALJ's analysis: "[h]er credibility is further eroded by her poor work history, barely having attained SGA [substantial gainful activity] in 1994-95, with no work after June 2000." Tr. 30. The ALJ also noted Plaintiff worked "full years from 1994 through 1998." Id. The Commissioner argues the ALJ's rationale is clear and convincing, citing Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) in support. In Thomas, the ALJ noted the claimant had "shown little propensity to work in her lifetime," with a spotty work history including years of unemployment between jobs. Id.

Plaintiff has a very limited employment history, which she attributes not to lack of motivation, but to lifelong mental illness in conjunction with impaired processing speed and working memory, as reflected in cognitive testing. Pl.'s Br. 15. The administrative record reveals Plaintiff earned between approximately $4,400 and $7,600 in the 1994-98 time period, with qualifying earnings in each quarter. Tr. 254. However, as Plaintiff observes, she could qualify for entire calendar quarters under the SSA's administrative framework merely by earning between $620 and $700 per quarter. Pl.'s Br. 15.[1] Thus, while Plaintiff technically earned enough to qualify as substantial gainful activity each quarter, it is also clear she did not work full-time between 1994 and 1998, considering her limited income.

The ALJ provided no further analysis of why Plaintiff's limited work history undermined the credibility of her symptom allegations. As Plaintiff explains, in the context of mental and emotional impairments, the failure to maintain substantial gainful activity is more likely caused by disabling symptoms of her various impairments than by a lack of motivation to work. The Court agrees. This is especially relevant in cases such as this, where Plaintiff has

---

[1] See also SSA Employment Coverage Thresholds, available at https://www.ssa.gov/OACT/COLA/CovThresh.html (last visited May 10, 2016).

impairments which make public interaction difficult for her. Because of the specific allegations of plaintiff's fear of public places and unfamiliar men, the ALJ's rationale is not legally sufficient.

The ALJ also impugned Plaintiff's credibility based on her activities of daily living ("ADLs"). When a claimant's reported ADLs are inconsistent with symptom allegations, an ALJ may deem the claimant not credible. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff testified to being an active and involved parent to her sons. She reported waking and getting them ready for school, preparing breakfasts, lunches, and dinners, playing board-games with her children, taking walks in the forest with her family, using public transit, reading and watching television, and grocery shopping with a friend – with the caveat that she prefers to go shopping at night to avoid crowds. Tr. 30, 532-33. The ALJ concluded that despite her general avoidance of public spaces, she, "in September 2008, has independent and active activities of daily living." Tr. 30.

While Plaintiff may be independent and somewhat active, the ALJ failed to identify why Plaintiff's reported ADLs are inconsistent with her testimony. The Ninth Circuit has long held that it is not necessary to "vegetate in a dark room" in order to qualify for SSI benefits. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)). Indeed, "[m]any home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In order to discredit Plaintiff based on ADLs, the ALJ must identify why the alleged activities belie her symptom allegations. Reddick, 157 F.3d at 722. Here, the ALJ simply provided his opinion that Plaintiff's lifestyle was active, inferring

she therefore must not be a reliable source regarding the severity of her impairments; this is clear error.

The Commissioner, in support of the ALJ's finding, invokes <u>Molina v. Astrue</u>, 674 F.3d 1104, 1113 (9th Cir. 2012), arguing reported ADLs "do not need to be the equivalent of full-time work; even where activities 'suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" Def.'s Br. 6 (quoting <u>id.</u>). However, the Commissioner fails to identify any testimony wherein Plaintiff claimed to be completely debilitated by her impairment. Independent review of the record reveals no such testimony; rather, Plaintiff testified that she is able to do a number of activities, including some occupational activity (in this case, beauty salon work), but her mental and physical impairments interrupt her workdays and workweeks to such an extent that she is unable to maintain full-time, competitive employment. <u>See, e.g.</u>, tr. 44-45, 53-54, 291-97.

The Commissioner further argues Plaintiff's comments to Dr. Wicher regarding taking walks in the forest with her family are inconsistent with her alleged mental and physical limitations. Def.'s Br. 7; <u>see also</u> tr. 30. The Commissioner contends, "individuals with disabling anxiety do not express enjoyment at the idea of being out in the open, and individuals with disabling physical impairments do not like treading over the uneven ground in a forest." Def.'s Br. 7. Addressing Plaintiff's mental impairment allegations, the Commissioner appears to equate Plaintiff's anxiety with a fear of being out in the open; however, neither Dr. Wicher nor Dr. Scharf diagnosed agoraphobia. <u>See</u> tr. 534, 820. Rather, the doctors diagnosed panic disorder, and neither suggested Plaintiff's panic disorder is triggered by communing with nature. In that regard, the Commissioner's argument is unpersuasive, as is the ALJ's similar

FINDINGS AND RECOMMENDATION - 13

contention. Tr. 30; see Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be utterly incapacitated in order to be disabled.") (citations and internal quotation marks omitted). The Commissioner's observation that physically disabled individuals do not like treading over the uneven ground of the forest may be true in some cases, but again, Plaintiff did not testify that she was unable to walk at all, and the ALJ did not explore the extent of Plaintiff's forays into the woods enough to establish any contradiction with her alleged physical limitations. Thus, neither argument establishes clear and convincing reasons to discount Plaintiff's testimony; the ALJ's analysis is lacking sufficient legal justification, and the Commissioner's arguments miss the mark.

Plaintiff's credibility was also impugned because the ALJ found changes in Plaintiff's ability to perform ADLs in the period between the 2008 evaluation with Dr. Wicher and the 2012 evaluation by Dr. Scharf were unsubstantiated by "intervening trauma or exacerbating cause." Tr. 30. It is unclear, however, the changes to which the ALJ referred. Id. To the extent the ALJ found Plaintiff unpersuasively alleged increased fear of other people, the ALJ failed to provide a valid rationale. In 2008, Plaintiff explained she enjoyed going to the forest and being out in the open, and also stated she usually grocery shops at night to avoid people. Tr. 533-34. She also endorsed panic attacks, fearfulness, and depression and anxiety, consistent with Dr. Wicher's diagnoses. Tr. 531-32, 534. In 2012, she reported "symptoms consistent with PTSD," panic attacks, and was "moderately anxious" during Dr. Scharf's evaluation. Tr. 818-19. Dr. Scharf diagnosed PTSD in addition to panic disorder and depressive disorder. Tr. 820. Further, both Drs. Scharf and Wicher noted symptoms consistent with borderline personality disorder ["BPD"], and although Dr. Scharf diagnosed BPD, Dr. Wicher provided "only a provisional diagnosis" of BPD, finding "it was not clear" whether she met all of the diagnostic criteria.

FINDINGS AND RECOMMENDATION - 14

Compare tr. 534 with tr. 820. Thus, the ALJ's finding that BPD had been "eliminated" as a diagnosis was not a rational interpretation of the evidence before him. Tr. 30.[2] Similarly, the ALJ's finding that Plaintiff's "only sustained diagnosis has been PTSD and some depression," inexplicably ignores her additional "sustained" diagnosis of panic disorder, and arguably, also a lengthy record of provisional and non-provisional diagnoses of BPD.[3] See tr. 534, 671, 768, 801, 802, 820, 882, 942.

Further, insofar as the ALJ and Commissioner infer any untoward behavior during Dr. Scharf's evaluation, it also is not a legitimate reason to assume Dr. Scharf's BPD diagnosis was somehow procured by Plaintiff's "nefarious" symptom complaints, absent any supporting evidence. Moreover, regardless of whether Plaintiff exhibited all the criteria of BPD, the ALJ made no finding linking any discrepancies in Plaintiff's diagnoses across providers to his evaluation of her credibility. Again, the Court cannot affirm the ALJ's decision on grounds the ALJ did not invoke. Pinto, 249 F.3d at 1054.

---

[2] The ALJ misconstrues Dr. Wicher's "[r]ule/out 301.83 Borderline Personality Disorder" diagnosis as a definitive statement that Plaintiff does not have BPD. See Tr. 30, 534. The ALJ's interpretation is plainly contradicted by Dr. Wicher's narrative explanation which immediately follows, wherein she describes Plaintiff has "some features" of BPD, but "[i]t was not clear whether she meets the other diagnostic criteria for this condition, such as difficulty being alone or impulsiveness. Consequently, only a *provisional diagnosis* can be made at this time." Tr. 534 (emphasis added). Considering the entirety of Dr. Wicher's explanation, the ALJ's interpretation that BPD had been "ruled out" is simply not a rational conclusion, let alone clear and convincing evidence of non-credibility. See Clausen v. M/V NEW CARISSA, 339 F.3d 1049, 1057 (9th Cir. 2003) (explaining the standard scientific technique, known as differential diagnosis, of identifying the cause of a medical problem *by ruling out potential causes* in order to determine the most likely cause) (emphasis added); Perkins v. Colvin, No. CV-13-0236-FVS, available at 2014 WL 4851344, at *4 n.2 (E.D. Wash. Sept. 29, 2014) ("[A] *provisional diagnosis* is rendered when there is a *strong presumption that the full diagnostic criteria of a condition will ultimately be met*" when sufficient information is gathered.) (quoting Am. Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 3-4 (4th ed. 1994) ("DSM-IV") (internal quotation marks omitted) (emphasis added).

FINDINGS AND RECOMMENDATION - 15

Finally, the ALJ briefly noted that "claimant's credibility is further eroded as Dr. Wicher noted in September 2008 that the claimant attempted to underscore, or even exaggerate, her impairments during the evaluation." Tr. 30. However, the ALJ's summary is not an accurate description of the record. Dr. Wicher reported:

> There were some indications that she *might have been* attempting to underscore, or even exaggerate, her impairment during the evaluation, although her problems with digits forward, digits backward, and mathematical calculations *may have been* due to her symptoms of anxiety. She may also have learning disabilities, given her history of special education classes and a modified high school diploma.

Tr. 534 (emphasis added). Clearly, where Dr. Wicher indicated the possibility of malingering behavior, she did not make any affirmative finding, as the ALJ inferred. To the contrary, Dr. Wicher identified two other "legitimate" explanations for Plaintiff's presentation, and provided no indication that any of the explanations was more likely than the next. Id. Further, Dr. Wicher did not conclude there was evidence of malingering, or suggest or infer her diagnoses and functional assessment was inaccurate. Therefore, at most, Dr. Wicher observed that a lack of effort was one of three possible explanations of Plaintiff's difficulty with counting digits backward and forward and performing mathematical calculations. Tr. 534.

However, when viewing the record as a whole, Plaintiff's performance on digits forward and backward in 2012 is consistent with her performance on the same test in 2006, which was rated in the "low average" range. Tr. 567. During that test, the evaluator reported Plaintiff, despite her relatively low scores, "appeared to put forth good effort on all tasks." Tr. 566. Thus, the ALJ appeared to ignore substantial evidence that Plaintiff has difficulty with that particular assessment, disregard the fact that Dr. Wicher provided two other equally likely explanations, and transform Dr. Wicher's equivocal observation into an unequivocal, and inaccurate,

FINDINGS AND RECOMMENDATION - 16

recitation of the medical record. Tr. 30. The Ninth Circuit has repeatedly cautioned that reviewing courts "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." See, e.g., Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and internal quotation marks omitted). The ALJ's imprecise interpretation of Dr. Wicher's lone and equivocal observation is precisely the type of marginal evidence to which the Ninth Circuit refers. Accordingly, the Court should not affirm the ALJ's overall credibility finding based upon it.

For all of the foregoing reasons, the ALJ's analysis of Plaintiff's credibility is devoid of legally sufficient rationales and not supported by substantial evidence. Remand, therefore, is recommended.

2. Medical Opinion Evidence

Plaintiff contends the ALJ erred in assessing the medical opinion evidence of various treating and examining physicians. Pl.'s Br. 7, 9-10, 11-13; Pl.'s Reply 4-9. The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester, 81 F.3d at 830. A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.

1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADLs. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

A. Dr. Scharf

As discussed in the preceding section, the ALJ accorded "little weight" to medical opinion evidence of examining physician Dr. Scharf. The ALJ found Dr. Scharf's September 2012 diagnosis of BPD and assignment of a GAF score of 50 was unsupported by objective medical evidence, as it was "derived solely from [Plaintiff's] anecdotal claims alone . . . ." Tr. 27, 820. As explained above, the ALJ erred in finding Dr. Scharf's BPD diagnosis was unsupported by the medical evidence, as the ALJ's rejection of his diagnosis was based, at least in part, on an erroneous interpretation of Dr. Wicher's provisional BPD diagnosis four years prior. Tr. 27, 30, 534, 820. To the extent Dr. Scharf's BPD diagnosis was accorded little weight because it was derived solely from subjective complaints, the rationale is invalid to the extent it is based on the ALJ's erroneous credibility determination. Supra. As such, neither of the ALJ's reasons for according little weight to Dr. Scharf's medical opinion regarding BPD is valid.

The Commissioner contends the ALJ's rejection of Dr. Scharf's BPD diagnosis is valid, arguing, "[m]ore recent therapy notes specifically state the Plaintiff does not meet the full criteria" for BPD. Def.'s Br. 10. The Court recognizes that on July 15, 2013, a licensed clinical social worker ["LCSW"] indicated Plaintiff "does not meet full BPD criteria." Tr. 1045, 1047. The ALJ, however, did not base his finding on the evidence the Commissioner identifies, as the chart note was made months after the ALJ's decision was published. The Court cannot uphold

the ultimate disability decision based on grounds the ALJ did not invoke. See, e.g., Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

The Commissioner further argues the ALJ "stated that he considered all the functional effects of Plaintiff's mental impairments, regardless of the competing labels that had been used over the years." Def.'s Br. 10. The argument is unavailing. First, the ALJ did not state he considered the "functional effects" of the mental disorders; rather, he stated, "[r]egardless of diagnosis, all of the claimant's mental disorders have been fully considered," which does not necessarily address "functional effects." Tr. 25. Next, to the extent the ALJ erroneously discounted both medical opinion evidence and Plaintiff's testimonial evidence, the ALJ's subsequent analysis of the functional effects of Plaintiff's mental impairments is tainted by the legally insufficient premises from which it is derived. In other words, the ALJ merely stating Plaintiff's "mental disorders have been fully considered," is no remedy for a legally insufficient analysis of the *evidence of* those mental disorders in the first place. It is one thing to consider whether the evidence supports a diagnosis, but another thing entirely to evaluate the functional effects of a set of symptoms, regardless of the particular diagnosis.

B. Dr. Wicher

Plaintiff assigns error to the ALJ's alleged selective incorporation of Dr. Wicher's observations regarding Plaintiff's ability to work. Pl.'s Br. 9-10.[4] Specifically, Plaintiff argues the ALJ accorded significant weight to Dr. Wicher's observations that "there were some indications that the claimant may have been attempting to underscore or exaggerate her impairments . . . ." Tr. 26, 534. The ALJ purported to accord substantial weight to Dr. Wicher's opinion that Plaintiff has mild deficits in ADLs and social functioning, and moderate deficits in

---

[4] As already explained *supra*, Plaintiff also assigns error to the ALJ's erroneous interpretation of the chart note indicating "[r]ule/out . . . [BPD]." Tr. 534.

FINDINGS AND RECOMMENDATION - 19

concentration, persistence, and pace. Id. Elsewhere in his decision, the ALJ noted Dr. Wicher's further finding that Plaintiff's persistence and pace were adequate, and showed she was able to complete tasks within normal workday limits. Tr. 31. Accordingly, the ALJ determined Plaintiff would be able to perform sedentary, unskilled work. Tr. 33; see, e.g., Bruesch v. Colvin, No. 3:12-cv-01453, available at 2014 WL 287883, at *6-9 (D.Or. Jan. 23, 2014) (citations omitted) (limitation to unskilled work adequately encapsulates moderate impairment in concentration, persistence, or pace).

Plaintiff argues the ALJ failed to adopt additional observations by Dr. Wicher regarding Plaintiff's prospects for future employment. Dr. Wicher stated that although Plaintiff's deficits in concentration, persistence, and pace were moderate, the difficulties "have not precluded working in the past, but could potentially make it more difficult for her to sustain employment in the future." Tr. 535. The doctor also observed there were "questions about her abilities with regard to attention, concentration, and memory functioning . . . [which] have not prevented her from working in the past, but could certainly make it more difficult for her to sustain employment." Tr. 534. Plaintiff essentially argues the ALJ credited Dr. Wicher's comments regarding symptom magnification, but declined to incorporate her opinion that future employment could be more difficult than her past employment. Pl.'s Br. 10. However, because Dr. Wicher's observations about Plaintiff's future work limitations were couched in terms of mere possibilities, the ALJ was not obligated to adopt them. See, e.g., Collum v. Colvin, available at 2014 WL 3778312 (D.Or. July 30, 2014) (ALJ is not required to incorporate equivocally-phrased limitations into the RFC) (citing Valentine v. Comm'r Soc. Sec. Admin., 574, F.3d 685, 691-92 (9th Cir. 2009)). Accordingly, the ALJ's assessment of Dr. Wicher's opinion is free of legal error.

C. Dr. Hoffman

Plaintiff argues the ALJ failed to adequately consider the medical opinion of Tracey Hoffman, Psy.D., who performed a one-time "learning disorder assessment" in August 2006. Dr. Hoffman administered a battery of cognitive tests and provided an analysis and opinion. Her findings included a diagnosis of borderline intellectual functioning ("BIF"), as well as a provisional diagnosis of attention-deficit hyperactivity disorder ("ADHD").[5] Tr. 569. Accordingly, Plaintiff contends the ALJ erred by not finding BIF a severe impairment at step two of the sequential evaluation process. Additionally, Plaintiff maintains Dr. Hoffman's list of work accommodations was erroneously omitted from her RFC; the list consisted of the following "employment setting" accommodations:

> (1) She *will need* extended deadlines to allow more time to complete activities and/or programs; (2) Provide a quiet distractions [sic] free work area whenever *possible*; (3) She *will need* breaks to address mental fatigue when learning new tasks or in new working environments; (4) She *will benefit* from the use of a hand held recorder to help with memory and organizational skills. She can tape record information for later review; [and] (5) She *will benefit* from telephone reminders of upcoming appointments.

Tr. 570 (emphasis added).

The Commissioner concedes the ALJ "may have erred" by failing to include BIF as a severe impairment at step two, but argues the error was harmless because the ALJ purported to consider all of Plaintiff's functional limitations, "regardless of diagnosis." Def.'s Br. 14. In support, the Commissioner contends the mere diagnosis of an impairment does not establish functional deficits, and to demonstrate harmful error, the Plaintiff must establish functional

---

[5] The Court notes Dr. Hoffman also reported Plaintiff "meets the criteria" for somatization disorder; however, neither party broached the issue; therefore the Court will not address it further. Tr. 569.

limitations beyond those accounted for in the RFC. Def.'s Br. 14 (quoting <u>Key v. Heckler</u>, 754 F.2d 1545, 1549-50 (9th Cir. 1985)), (citing <u>Carmickle</u>, 533 F.3d at 1164-65, <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007)). To the degree the accommodations listed by Dr. Hoffman constitute functional deficits, argues the Commssioner, they need not be incorporated because they are equivocal statements. Def.'s Br. 13.

Although the Court agrees with the Commissioner's interpretation of the case law, the Court is not persuaded the accommodations set forth are not essentially functional deficits/limitations. For example, Dr. Hoffman differentiated between lists of accommodations versus recommendations in her report. Tr. 570. Further, unlike Dr. Wicher's statements described <u>supra</u>, some of Dr. Hoffman's accommodations are presented as imperatives for Plaintiff to perform in the workplace. Specifically, items (1) and (3) assert Plaintiff *will need* certain accommodations, including extended deadlines and breaks to address mental fatigue when learning new task or working in new environments. Tr. 570. As such, the Commissioner's argument that those items are merely "recommendations for success on the job" is unavailing.

It is unclear what weight the ALJ accorded Dr. Hoffman's opinion. In one passage, the ALJ purported to accord "some weight . . . as her assessment of claimant's mental limitations is generally consistent" with the record as a whole. In another passage, however, the ALJ indicated he gave "little weight" to the assessment and opinion, because the medical evidence did not support the finding Plaintiff required the imperative accommodations of extended deadlines to complete tasks. Tr. 30-31. In support, the ALJ explained Dr. Wicher's observations that Plaintiff's persistence and pace "appears to be adequate," and Dr. Wicher's assessment "suggests . . . claimant is able to complete tasks within normal work time limits." Tr. 31. The

FINDINGS AND RECOMMENDATION - 22

ALJ further noted Dr. Hoffman "appeared" to have relied on Plaintiff's subjective symptom complaints more than Dr. Wicher. Id.

As discussed above, the ALJ did not err in according substantial weight to Dr. Wicher's opinion that Plaintiff has moderate limitations in concentration, persistence, and pace. However, whether the ALJ provided specific-and-legitimate reasons to discount Dr. Hoffman's opinion insofar as it contradicted Dr. Wicher's is a separate question. For example, the ALJ asserts Dr. Wicher's opinion "suggests" Plaintiff can complete tasks "in normal work time limits." Tr. 31. However, Dr. Wicher's assessment was presented in ambiguous terms, as she opined, "there are some questions about [Plaintiff's] abilities with regard to attention, concentration, and memory functioning"; "she may have learning disabilities"; "there may have been some evidence of concentration difficulties . . . although the basis for these difficulties was somewhat unclear"; "her pace was not formally assessed, but she was able to complete a background questionnaire . . . in a reasonable amount of time." Tr. 534-35. Dr. Wicher's conclusion was also vague, and arguably factually dubious: "[Plaintiff's mild deficits in her ability to perform [ADLs], mild deficits in social functioning, and moderate deficits in concentration, persistence, and pace represent the primary psychological barriers to returning to full-time, sustained employment." Tr. 535. The passage appears to say, contrary to the ALJ's interpretation, that Plaintiff's psychological impairments are barriers to full-time work; moreover, Dr. Wicher also appears to assume, incorrectly, that Plaintiff had prior full-time work to return to. Id.

As such, while Dr. Wicher found what "appear[ed] to be" moderate limitations in concentration, persistence, and pace, the finding is not necessarily contradicted by the need for extended deadlines to allow more time to complete activities and/or programs. Compare tr. 535 with tr. 570. Any "contradiction" is all the more tenuous when viewing the record as a whole,

FINDINGS AND RECOMMENDATION - 23

including Plaintiff's erroneously discredited testimony and the erroneously discredited medical opinion of Dr. Scharf that Plaintiff "would likely have difficulties with persistence after 15 to 20 minutes." Tr. 820. Accordingly, to the extent the ALJ discredited Dr. Hoffman's finding that Plaintiff would require extra time to complete tasks based on a purported contradiction with Dr. Wicher's findings, the rationale is not supported.

The ALJ also indicated Dr. Hoffman's finding was contradicted by a mental health provider's April 9, 2008 chart note stating Plaintiff was able to participate "in all that is required of her through the jobs program despite being very busy with her family life." Tr. 30, 692. However, the chart notes directly before and after the April 9 visit indicate Plaintiff was not doing all that was required of her. On April 2, 2008, the chart note indicates Plaintiff had not followed her therapy treatment plan by not attending "in over one month," and that "she may not stay in the JOBS program much longer." Tr. 694. On April 23, 2008, Plaintiff reported she had been "inconsistent with attendance in the past because she was afraid of loosing [sic] control over her emotions." Tr. 690. Thus, while Plaintiff may have been doing all that was asked of her at the JOBS program, she was plainly not doing all that was required of her in her therapy, which significantly undercuts the ALJ's reasoning.

Moreover, while Plaintiff was apparently able to fulfill her obligations in the JOBS program as of April 2008, there is no indication that the JOBs program required Plaintiff to work without extended deadlines to complete tasks and/or programs. To the contrary, the Commissioner agrees Plaintiff *was excused from actually working* while participating in JOBS. Pl.'s Br. 6-9; Def.'s Br. 13. Furthermore, the Appeals Council initially remanded this case for re-hearing because the first ALJ *took the same passage out of context in exactly the same way*. See tr. 130 ("This one statement taken out of context is insufficient to support the mental [RFC]

. . . .”), <u>see also</u> tr. 118, 119. Again, the Court may not affirm an ALJ by simply isolating a specific quantum of evidence to support an RFC finding, while disregarding substantial evidence to the contrary. <u>Ghanim</u>, 763 F.3d at 1160. Accordingly, the ALJ's proffered rationales for discrediting Dr. Hoffman are not supported by substantial evidence, and should not be upheld.

D. <u>Natalia Tommasi, MA, LPC</u>

    Plaintiff argues the ALJ erroneously disregarded the medical opinion of Natalia Tommasi of LifeWorks Northwest. The ALJ explained that an April 12, 2011 letter purportedly authored by Ms. Tommasi was signed by another individual, and accorded the letter little weight. Tr. 31, 802-03. The letter, undated but addressed to Plaintiff's attorney, indicates Ms. Tommasi met with Plaintiff 2-4 times per month. The letter also indicates Ms. Tommasi diagnosed PTSD, and although Plaintiff exhibited "some traits" of BPD, Ms. Tommasi had not formally diagnosed it. Tr. 802. The letter describes Plaintiff's difficulty leaving her home due to anxiety, and expresses doubt that Plaintiff could functional appropriately in a competitive work environment due to her mental impairments. Tr. 803. A signature block at the letter's conclusion lists Ms. Tommasi's name, credentials, and address, and below that, a handwritten note: "Kenneth Ihli, Ph.D., Licensed Psychologist, Supervisor, (Natalia Tommasi is no longer with this agency)". The ALJ accorded the letter "little weight," because the letter, "purported to be from one provider who has treated [Plaintiff] for years, is actually signed by someone else, who may or may not have been involved in her care." Tr. 31. <u>See</u> <u>Taylor v. Comm'r of Soc.</u> <u>Sec. Admin.</u>, 659 F.3d 1228, 1234 (9th Cir. 2011) (a non-acceptable medical source opinion may be accorded greater weight when the non-acceptable medical source was an agent of an

acceptable medical source, or worked closely with and under the supervision of an acceptable medical source's supervision) (citing Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996)).

Similarly, the Commissioner argues there is no evidence Dr. Ihli was ever involved in Plaintiff's treatment, or was in fact supervising Ms. Tommasi, as his name is otherwise absent from the medical record. Def.'s Br. 16. The Commissioner observes, "it is odd that Dr. Ihli did not redraft the letter he put his name on in his own voice so that it would be clear what Dr. Ihli was opining and why." Id. However, as Plaintiff argues, it would have been disingenuous for Dr. Ihli to re-draft and sign a letter attesting to treating a patient he did not treat. Pl.'s Reply 8. Unlike the case in Gomez, the Dr. Ihli's written note does not indicate he endorses any of the letter's contents, or that he ever treated Plaintiff. Thus, the letter cannot be considered the equivalent of Dr. Ihli's "acceptable medical source" opinion.

The Commissioner takes the issue a step further, arguing the opinion set forth in the letter cannot be attributed to Ms. Tommasi without her signature. Def.'s Br. 16. The Commissioner references no authority, however, for the proposition that in order for a medical opinion to be valid, it must be signed by its author, nor is the Court aware of any such rule. SSA administrative records typically contain voluminous medical chart notes and often many medical opinions, which may or may not be signed. For example, in the instant record, the ALJ presumably had no hesitation according "substantial weight" to the medical opinion of Dr. Wicher, although it was not signed by her. Tr. 535. Likewise, the Commissioner has no qualms about the absence of Dr. Wicher's signature in the Commissioner's discussion about why the ALJ properly accorded portions of it weight. Def.'s Br. 10-12. Moreover, the Commissioner does not contend that Ms. Tommasi was not the author of the contents of the letter. Id., 14-15 ("the letter is clearly drafted in Ms. Tommasi's voice"). Thus, it appears the Commissioner's

FINDINGS AND RECOMMENDATION - 26

untenable position is that the signature requirement applies only to evidence that does not support the ALJ's disability determination.

While the Court is aware of a rule requiring consultative medical examiners to "sign" their opinions, the Court knows of no case law, rule, or statute requiring lay evidence in an SSA case to be hand-signed by its author when the author's identity is *known*.[6] See Brooks v. Colvin, available at 2015 WL 1537545, at *5 (W.D.Penn April 6, 2015) (". . . nothing in 20 C.F.R. § 416.920a(e)(1) requiring a handwritten signature and the [SSA]'s Program Operations Manual System (POMS) expressly permits either an actual physical signature or an approved electronic signature . . . [h]ere, Dr. Link's typewritten signature constitutes an "approved electronic signature."); But see 20 C.F.R. § 404.1519o(b) (the Commissioner may not use an unsigned or improperly signed consultative examination report in denying benefits);  Tsouvas v. Colvin, available at 2014 WL 4078243 (E.D.Cal. Aug. 15, 2014) (anonymously authored medical opinion evidence cannot be accorded the evidentiary weight of an acceptable medical source opinion) (citations omitted); Bergfeld v. Barnhart, 361 F.Supp.2d 1102, 1111 (D.Ariz. March 21, 2005) (ALJ cannot rely on *consultative medical report* which is not signed by the examining doctor); Thus, the dispositive issue is whether an official SSA consultative examination form is "signed" by the medical expert who wrote it, or, alternatively, whether the author of the content of a non-official piece of medical or lay evidence can be attributed to a particular author. Here, the letter is plainly not an official SSA form, nor is it a consultative examination opinion. Further, it is not a check-the-box form authored by an attorney and later endorsed by a physician's handwritten signature. Instead, it is a letter addressed to Plaintiff's attorney describing the Plaintiff's treatment history, which, by all accounts, was written by Ms.

---

[6] It is unclear whether the rules require a hand-written signature; many consultative examiners use an e-signature, stamp, or boilerplate signature block to denote authorship.

FINDINGS AND RECOMMENDATION - 27

Tommasi. The letter is written on LifeWorks Northwest letterhead, and includes a signature block indicating the letter was written by Ms. Tommasi. Accordingly, although Ms. Tommasi did not provide a handwritten signature, there is no serious doubt the letter's contents are her own.[7]

As an LPC ("licensed professional counselor"), Ms. Tommasi is considered an "other source" under the SSA regulations, below "acceptable medical sources" and "non-acceptable medical sources." See Social Security Ruling ("SSR") 06-03p, available at 2006 WL 2329939, at *2. Thus, despite their professional certification, LPC's are grouped in the same category as daycare center workers, neighbors, employers, and family members. Id. Despite the relatively low station of "other source" opinions in the SSA legal framework, ALJ's must nevertheless consider other source evidence when evaluating the medical opinion from an acceptable medical source. Id. at *4. Additionally, the opinion of a "non-medical source" such as an LPC may outweigh the opinion of an acceptable medical source if that person "has seen the individual more often and has greater knowledge of the individual's functioning over time and . . . has better supporting evidence and is more consistent with the evidence as a whole." Id. at *6. The record is uncontroverted that Ms. Tomassi was involved in Plaintiff's therapy roughly twice a week for more than three years of the relevant time period in this case; thus, the SSA rules require that her observations and opinion of Plaintiff's mental health status not be disregarded lightly. Accordingly, the ALJ must present reasons germane to Ms. Tomassi in order to discount her testimonial evidence. Molina, 674 F.3d at 1114 (9th Cir. 2012) (citations omitted).

---

[7] The Court notes the prior ALJ acknowledged the opinion as Ms. Tommasi's, which the ALJ rejected for other reasons. Tr. 119. The Appeals Council subsequently remanded that ALJ's decision in part because it did not sufficiently explain why Ms. Tommasi's opinion warranted only limited weight. Tr. 130.

FINDINGS AND RECOMMENDATION - 28

The ALJ disregarded Ms. Tomassi's letter because it "is signed by someone else, who may or may not have been involved in [Plaintiff's] care." Tr. 31. Neither of the ALJ's reasons withstand scrutiny. First, regardless of whether Dr. Ihli participated in Plaintiff's care, the ALJ must provide a reason germane to Ms. Tomassi to disregard her written testimony. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). Next, as discussed above, the fact Ms. Tomassi did not include a handwritten signature in the letter is not a cogent reason to doubt she wrote it, and the Commissioner essentially concedes she did so. <u>See</u> Def.'s Br. 16. Further, to the extent the ALJ was not required to provide a germane reason to discount Ms. Tommasi's opinion because it is similar to Plaintiff's discredited testimony pursuant to <u>Molina</u>, the argument is nullified by the ALJ's erroneous credibility finding. For these reasons, it was error for the ALJ to disregard Ms. Tommasi's letter.

E. <u>Natalie Thompson, RN, PMHNP</u>

Plaintiff assigns error to the ALJ's assessment of written testimony of Natalie Thompson, a registered nurse ("RN") and a psychiatric mental health nurse practitioner ("PMHNP"). Ms. Thompson wrote a letter describing Plaintiff's mental health barriers including PTSD and BPD, difficulty with public settings, limited coping skills, inability to handle stress, evidence of somatization disorder, and Ms. Thompson's opinion that Plaintiff is unlikely to be "successful" in managing her various psychological symptoms. Tr. 801. The ALJ accorded Ms. Thompson's opinion "little weight," finding she (1) relied "exclusively" on Plaintiff's subjective complaints which the ALJ found inconsistent with the medical evidence; (2) referenced Plaintiff's physical complaints which the ALJ found inconsistent with the medical evidence; (3) stated plaintiff would not be successful "at this point" which does not

address the twelve-month durational requirement; and (4) is not an acceptable medical source. Tr. 31.

The ALJ's first rationale is unsupported considering his erroneous evaluation of Plantiff's credibility; moreover, the ALJ failed to provide any support for the statement that Ms. Thompson relied exclusively on Plaintiff's subjective complaints. Second, while it is true Ms. Thompson "referenced" Plaintiff's physical complaints, she did not endorse the complaints, but rather described they evinced Plaintiff's somatization of pain. Tr. 801. By definition, somatic pain is not "supported" by medical evidence because it is a symptom of a mental disorder that occurs "without a detectable or known organic basis." See Chaudhry v. Astrue, 699 F.3d 661, 665 n.7 (9th Cir. 2012) (citing *Stedman's Medical Dictionary*). Thus, there is no valid basis for discrediting Ms. Thompson because she mentioned somatization of symptoms; to the contrary, her assessment is consistent with the ALJ's own finding that Plaintiff's physical pain complaints are not fully supported by the objective medical evidence. Tr. 31. Further, the Commissioner's contention that Ms. Thompson's opinion regarding somatization disorder is outside of her area of expertise because it describes the physical manifestation of mental symptoms, also lacks merit. Def.'s Br. 15. As a licensed PMHNP, Ms. Thompson's opinion regarding symptoms of somatization disorder is relevant evidence of symptoms, diagnosis and prognosis, and what Plaintiff can still do despite her mental restrictions. SSR 06-03p at *5.

Third, that Ms. Thompson's statement Plaintiff would not be successful "at this point" due to her mental impairments is not valid because it did not address the twelve-month durational requirement again lacks merit. Ms. Thompson did not express or infer Plaintiff had only recently not been "successful" at managing her symptoms. Tr. 801. Instead, she described treating Plaintiff for double the length of the durational period, and presented general

FINDINGS AND RECOMMENDATION - 30

observations and opinions of Plaintiff's mental health status over that time. Id. That Ms. Thompson additionally provided an opinion regarding Plaintiff's status at the time the letter was written does not negate the preceding content of the letter, and is, in fact, consistent with it. Id. Finally, as noted above, SSR 06-03p directs that it is error for an ALJ to discount the testimony of a nurse practitioner merely because the person is not an acceptable medical source. For these reasons, the ALJ failed to provide any valid reason, germane to Ms. Thompson, for according her opinion little weight.

In sum, because the ALJ failed to provide legally sufficient reasons to discredit the observations, opinions, and insights of Plaintiff's longtime treating physicians; and examining physicians opinions to the extent they did not support the ALJ's non-disability decision, the ALJ erred.

3. RFC Formulation

The RFC is the most that a claimant can do despite any functional limitations. See 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including a claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Similarly, an ALJ need include only credible limitations in questions to the VE. Batson, 359 F.3d at 1997.

Because the Court finds the ALJ erred in discrediting Plaintiff's symptom testimony and the medical opinions of Drs. Scharf and Hoffman, and Mss. Tomassi and Thompson, the ALJ's RFC formulation is not supported by substantial evidence. Robbins, 466 F.3d at 885. If the erroneously discredited testimony of Plaintiff, and opinions of the acceptable and non-

acceptable medical providers were properly credited, the ALJ would have been required to include additional limitations in the RFC, including, but not limited to: extended deadlines to complete activities, extra breaks to address mental fatigue when learning new tasks or in a new work environment, and difficulty maintaining concentration, persistence, or pace after 15-20 minutes. The hypothetical questions to the VE at step five did not include all of these limitations; consequently, the VE's responses are not of evidentiary value, which negates the ALJ's conclusions at step five. Lewis, 236 F.3d at 517.

4. Remand for Payment of Benefits

Plaintiff requests the Court reverse the ALJ's decision and remand this case for payment of benefits. Courts may affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). Remand for the calculation of benefits is one possible remedy. Benecke, 379 F.3d at 593. As discussed above, the ALJ did not provide legally adequate reasons to accord the opinions of Drs. Scharf and Hoffman, and Mss. Tomassi and Thompson, little weight. Although not all ALJ errors require remand, the Court can confidently conclude that a reasonable ALJ, when fully crediting the aforementioned opinions, could have reached a different disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006) (citations omitted). Because the ALJ's errors were not harmless, remand is required.

On remand, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be

required to find the plaintiff disabled on remand. <u>Garrison</u>, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" <u>Id.</u> at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. <u>Dominguez v. Colvin</u>, 808 F.3d 403, 407 (9th Cir 2015) (citing <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

The first requisite is met based on the ALJ's inadequate rejection of the opinions of Drs. Scharf and Hoffman, and Mss. Tomassi and Thompson. To meet the second requisite, the Court must establish "the record has been fully developed and further administrative proceedings would serve no useful purpose." <u>Garrison</u>, 759 F.3d at 1020. In other words, the Court must determine whether there are outstanding issues of fact, such as significant conflicts or ambiguities in the evidentiary record, or if the presentation of additional evidence would likely be useful. <u>Treichler</u>, 775 F.3d at 1101 (citations omitted).

The Commissioner, in support of a remand for further proceedings, argues the record "contains numerous evidentiary conflicts," but does not identify specific dispositive conflicts. Review of the Commissioner's brief reveals only a few such conflicts. For example, as previously discussed, two chart notes signed by LCSW Laura Sicignano on July 15 2013 indicate Plaintiff does not meet the full criteria for BPD. Tr. 1045, 1047. However, in order for a conflict in the record to necessitate remand for further proceedings, there must be a likelihood of utility. <u>Treichler</u>, 775 F.3d at 1090 (citing <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000)). Here, however, even if the new proceeding established Plaintiff does not meet all the

FINDINGS AND RECOMMENDATION - 33

criteria for BPD, there would be no material effect on the case; Plaintiff's claim does not rely on meeting or equaling a listing corresponding to BPD, and whether the BPD diagnosis verified or not, the ALJ's credibility decision remains legally deficient. Additionally, the Commissioner does not offer any reason why further proceedings would be useful.

Even if Plaintiff no longer meets the full criteria for a BPD diagnosis, there is no conflicting evidence regarding whether Plaintiff exhibits a number of symptoms consistent with BPD "traits," which generally overlap with symptoms of her unequivocal severe impairments of anxiety, depression, and PTSD. In fact, every one of Plaintiff's providers noted symptoms at least consistent with BPD or BPD traits. Further, although Ms. Sicignano's chart note indicates Plaintiff continues to suffer "from PTSD, with anxiety causing agoraphobia/panic attacks. History of cutting, Borderline traits . . . ." These findings are not inconsistent with observations of other providers. Dr. Wicher noted "some feature of underling [BPD], with instability of mood, interpersonal relationships, and vocational functioning, along with difficulty controlling anger and recurrent self-mutilation and suicidal behavior." Tr. 534. Accordingly, Dr. Wicher opined that limitations in social functioning and concentration, persistence and pace would be barriers to future employment. Tr. 535.

Similarly, Dr. Hoffman found limited intellectual functioning and possible ADHD, which the doctor felt would require extended deadlines and additional breaks, along with several other recommendations for work accommodations. Tr. 569-70. Dr. Scharf diagnosed BPD in addition to PTSD, panic disorder, and depression, and noted Plaintiff would have difficulty with persistence. Tr. 820-21. Mss. Tomassi and Thompson provided opinions predominantly addressing PTSD, and found she would have difficulty in a competitive work

environment, including attendance, dealing appropriately with normal stress, normal criticism, and production demands. Tr. 801-03.

To the extent the Commissioner contends conflict persists between Plaintiff's testimony and the medical evidence as articulated by the ALJ, any such conflicts were addressed and resolved in the Court's discussion *supra.* Specifically, it is not necessarily inconsistent to want to avoid people but enjoy visiting the forest, it is not inconsistent that a woman with a history of abuse and expressed fear of men has nonetheless been able to raise two boys and apparently sustain a relationship with one specific individual, her boyfriend, for a number of years. Further, Plaintiff's ADLs, though they show some ability to function, are not inconsistent with her testimony regarding the severity of her symptoms. These flawed findings have been explained above.

Further, in supporting the ALJ's findings regarding Dr. Scharf's report, the Commissioner noted Plaintiff's allegation that she had "consistent difficulty leaving her home due to anxiety" conflicted with her testimony that she prefers to go grocery shopping at night. Tr. 30, 533-34; Def.'s Br. 9. However, the argument fails, as not only are the two statements fairly consistent with Plaintiff's alleged fear of being in public places and social situations, but also with numerous medical providers. See, e.g., Tr. 392 (MSW Tom Weinstock-Blair reports difficulty going to work and outside the home due to intense fear of interaction with others); tr. 569 (Dr. Hoffman notes Plaintiff is anxious when using public transportation and sometimes fearful of leaving her house); tr. 801 (Ms. Thompson describes Plaintiff as very isolative, has difficulty getting "out into community" despite her therapists' recommendations); tr. 802 (Ms. Tomassi encourages exposure therapy of going out of the house at least two to three times per week, describes panic attacks when in public); tr. 1039 (Ms. Sicignano describes Plaintiff's

ongoing exposure therapy, which involves the goal of going to her mailbox one time per week to three times per week). As such, the record is well-developed; further proceedings are unlikely to establish additional dispositive facts regarding plaintiff's fear of public places and/or social interaction.

The existence and persistence of Plaintiff's constellation of psychosocial symptoms is corroborated by virtually every provider of record, though different providers ascribed the substantially similar symptoms to a handful of discrete diagnoses. Tr. 534-35, 570, 801, 802-03, 820. Although different diagnoses were ascribed to Plaintiff's various psychological complaints over the years, the diagnoses consistently encompassed overlapping symptomatological elements. Viewing the record as a whole, the Plaintiff's symptoms and their corresponding functional effects diverged little despite the many years, providers, and diagnoses which this administrative record encompasses.

The Court is therefore satisfied that there are no material conflicts between Plaintiff's testimony and the medical evidence requiring further analysis or collection of additional information. The Court also finds no glaring factual conflicts remain within the medical record. Accordingly, the Court follows Ninth Circuit precedent and assumes the limitations set forth by the Plaintiff and the erroneously discredited medical providers are true. See Brown-Hunter v. Colvin, 806 F.3d 487, 496 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1101).

Plaintiff testified that she has severe social anxiety which limits her ability to function around others, whether they are customers, co-workers, or supervisors. Tr. 296-97. These limitations are corroborated by virtually every one of Plaintiff's mental health providers over the years. Plaintiff also testified she has frequent, but unpredictable, panic and anxiety attacks which require recovery time, and would clearly cause significant disruptions in productivity in a

work environment. Tr. 46, 54. Plaintiff further alleges her PTSD, social anxiety, and panic disorder would likely negatively impact her ability to maintain acceptable attendance in a competitive workplace setting. Tr. 48. Finally, Plaintiff testified she has difficulty concentrating, remembering things, and maintaining a reasonable pace in completing tasks. Tr. 54-55.

In addition to these myriad mental limitations, Plaintiff also has physical impairments, which the ALJ found limit her to sedentary work. Tr. 24. Thus, when evaluating the combined effect of Plaintiff's extremely limiting physical impairments in combination with her severe mental impairments, the Court has no serious doubt that Plaintiff lacks the functional capacity to work on a regular and continuing basis (at least eight hours per day, five days per week, with normal break periods) as required by the Act. 20 C.F.R. §§ 404.1520(e), 416.020(e); see SSR 96-8p.

As the Ninth Circuit has repeatedly stated, "allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." Benecke, 379 F.3d at 595; Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.") (citation omitted). The notion is particularly relevant here, as this claim has been in litigation for nearly a decade. Tr. 20.

When the Appeals Council remanded this matter, in 2012, it stated the next ALJ should not take a particular passage regarding the JOBS program out of context, should properly address Plaintiff's credibility despite a mention of somatization disorder, and should provide sufficient reasons for discounting the medical opinions of Mss. Tommasi and Thompson. Tr.

130. As the Court explained at length, the ALJ did not adequately address *any* of these imperatives upon rehearing. The Commissioner, by virtue of two ALJ hearings and two opportunities for review by the Appeals Council, has already played the "heads we win, tails let's play again" game; the Court is convinced that remanding for additional proceedings would be unlikely to serve a useful purpose and would only further delay the receipt of benefits.

## Conclusion

A judgment should be entered REVERSING the Commissioner's decision and REMANDING this action to the SSA for immediate calculation and payment of benefits.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due June _20_, 2016. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this _2nd_ day of June, 2016.


_/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 38